UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

E.J. CROWELL,

                Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

CASE NO.    C07-5575FDB-KLS

REPORT AND RECOMMENDATION

Noted for January 9, 2009

Plaintiff, E.J. Crowell, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 51 years old.[1] Tr. 50. She has a high school education, two years of vocational training as a dental technician and past work experience as a cook in a restaurant. Tr. 101, 103, 147, 165, 562.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

On May 19, 2005, plaintiff filed an application for disability insurance benefits, alleging disability as of August 1, 1994, due to post traumatic stress disorder ("PTSD") reactions, depression, insomnia, a spinal condition, and joint injury issues. Tr. 40, 74-76, 147. Her application was denied initially and on reconsideration. Tr. 50-52. A hearing was held before an administrative law judge ("ALJ") on October 30, 2006, at which plaintiff, represented by counsel, appeared and testified. Tr. 556-88.

On January 3, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

    (1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

    (2)    at step two, plaintiff had "severe" impairments consisting of obsessive compulsive disorder ("OCD") and PTSD;

    (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4)    after step three but before step four, plaintiff had the residual functional capacity to perform a modified range of heavy work, with the need to avoid a high degree of public or social interaction; and

    (5)    at step four, plaintiff's past relevant work as a cook in a restaurant did not require the performance of work-related activities precluded by her residual functional capacity.

Tr. 40-48. Plaintiff's request for review was denied by the Appeals Council on August 24, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 3; 20 C.F.R. § 404.981.

On October 19, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#7). The administrative record was filed with the Court on April 23, 2008. (Dkt. #14). Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings for the following reasons:

    (a)    the ALJ erred in evaluating the United States Department of Veterans Affairs ("VA") finding that plaintiff is 100% disabled by her PTSD as of January 31, 1995; and

    (b)    the ALJ erred in finding plaintiff to be capable of performing her past relevant work as a cook in a restaurant.

For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

disabled, and therefore recommends the ALJ's decision be reversed, and this matter be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.      <u>The ALJ's Evaluation of the VA's Disability Determination</u>

Although a determination by the VA about whether a claimant is disabled is not binding on the Social Security Administration ("SSA"), an ALJ must consider that determination in reaching his or her decision. <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504. Further, the ALJ "must ordinarily give great weight to a VA determination of disability." <u>McCartey</u>, 298 F.3d at 1076. This is because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

<u>Id.</u> However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." <u>Id.</u> (citing <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001) (because criteria applied by VA and SSA are not identical, VA rating of disability is not legally binding on Commissioner)); <u>see also</u> 20 C.F.R. § 404.1504 ("A decision by . . . any other governmental agency about

whether you are disabled . . . is based on its rules and . . . [t]herefore . . . is not binding on us.").

In late May 1997, the VA issued a disability rating decision, increasing its previous early November 1995 evaluation of plaintiff's disability due to PTSD from 10 percent to 100 percent.[3] Tr. 136. The reasons and basis given for the 100 percent disability evaluation read in relevant part:

> . . . Ms. Crowell and her friend, Kelly Morse . . . testified as to the effect of the PTSD symptoms on her life. Ms. Crowell indicated that she has had about 25 jobs in the last 15 years, usually cooking and that the longest job was about 6 months. More recently, she has been cleaning houses but finds that she is unable to keep clients. She indicated that she has made no profit and probably has lost money because of her initial expenses. She went through a program of vocational rehabilitation, finishing in 1992 but was unable to maintain employment because of her behavior. She is not currently under psychiatric treatment.
>
> The VA examination in January 1997 found that Ms. Crowell is largely unsuccessful in her attempt to work occasionally cleaning houses because of her difficulty in interacting with others. She has frequent nightmares, intrusive thoughts and is socially isolated. Diagnoses were PTSD and secondary dysthymia. GAF (Global Assessment

---

[3] In that early November 1995 disability rating decision, the VA found plaintiff's PTSD to be "10 percent disabling from January 31, 1995." Tr. 139. According to that rating decision, "[a]n evaluation of 10 percent is assigned if there is evidence of emotional tension or anxiety productive of mild social and industrial impairment." Id. The reasons and bases for the 10 percent disability evaluation read in relevant part:

> . . . She has had marked difficulty in talking about . . . incidents [of past emotional and sexual harassment and assault], even with close friends. She is currently undergoing counseling for problems with nightmares. She says she has nightmares and flashbacks about the assault incident. . . . She knows that she does not like to be in a crowded room and does not want people behind her. It is very hard for [sic] to express or experience physical affection. She does not like to be touched or held down, even playfully. Generally she tries to keep past events out of her mind, but they do intrude during her day, although not as intensely as it appeared during the interview. . . . She indicated being unsure about a history of flashbacks, although she said sometimes she thinks so intensely on abusive incidents that she forgets where she is. She will continue to experience the content of a nightmare even after she awakens. She is always hypervigilant. She reported bouts of depression where "I want to cry all the time."
>
> . . . She has been taking Zoloft since the spring of 1995, which she says has reduced her obsessive-compulsive symptoms.
>
> The veteran started her own cleaning business in February 1995, now has 35 clients and has two people working part-time for her. She works about 50 hours a week herself. She prefers being self-employed to working for other people, and likes being in control. She has been living with a partner since 1990, and feels the relationship is going well. She has friends she gets together with, and volunteers for an organization that helps stray animals.
>
> The examiner found the veteran tense at times, relaxed at others. She was quite articulate, described her mood as "good." She was alert and oriented as to person, place, and time. There was no evidence of delusional thinking, no hallucinations or thought disorder. Psychological insight and judgment were fair. Recent and remote memory were grossly intact. The examiner felt the veteran did suffer from post traumatic stress disorder . . . As the evidence shows the veteran is working and maintaining effective relationships with others, a 10% evaluation is assigned.

Tr. 139-40.

REPORT AND RECOMMENDATION
Page - 4

> of Functioning) was 41.
>
> The . . . file shows that she was trained in 1992 but unable to maintain employment as a result of that training. It was noted that she has had a variety of cooking jobs, often changing jobs because of difficulty getting along with others.
>
> . . .
>
> . . . The evidence shows severe PTSD symptoms with the most recent GAF score of 41 and that she is demonstrably unable to maintain employment at the present time. For these reasons, a total evaluation is assigned from the original date of claim.
>
> The evaluation of PTSD is increased to 100 percent disabling effective January 31, 1995. An evaluation of 100 percent is assigned whenever there is evidence of total occupational and social impairment, due to such symptoms as: gross impairment in though processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Since there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination.

Tr. 136-37.

Plaintiff argues the ALJ failed to give persuasive, specific and valid reasons for discounting the late May 1997 100 percent disability evaluation rating decision as required. The undersigned disagrees. With respect to that rating decision, the ALJ found in relevant part as follows:

> . . . According to notes from a May 1997 service connected disability report, the claimant was awarded a 100 percent disabling rating upon appeal of the November 1995 rating of 10 percent disability, due to her reported inability to keep clients for her housekeeping business, and inability to maintain employment following vocational rehabilitation as a dental lab technician because of problems with her behavior (Exhibit 16F). This is in direct conflict with a January 1995 OCD evaluation report by Peter D. Londborg, M.D., along with notes from an August 1995 consultative examination report by Belinda Gustafson, M.D., wherein both physicians indicated that the claimant reported that following the successful completion of a two-year dental laboratory technician program, she worked as a dental laboratory technician for seven months, and only left the job because she did not like the work. This is also inconsistent with an April 2001 mental health treatment note from Puget Sound Veterans Administration Hospital, wherein the claimant reported that she and her domestic partner started a take out restaurant business sometime in 2000, after her domestic partner resigned from her registered nurse's job due to stress, and that prior to starting this business, the claimant operated her own janitorial business and enjoyed working alone (Exhibits 2F, 4F, and 11F). Although the claimant testified that she stays at home to avoid problems with others, notes from November 1995 service connected disability report indicate that the claimant reported that in addition to working 50 hours a week in her janitorial business, she spent time getting together with friends to socialize, and also spent time volunteering at a stray animal shelter (Exhibit 16F).

Tr. 45-46.

In regard to the above findings, plaintiff specifically argues that the language of the late May 1997

REPORT AND RECOMMENDATION
Page - 5

1  rating decision "may just be inartfully drafted" concerning circumstances surrounding her dental
2  laboratory technician job.[4] (Dkt. #19, p. 4). What the VA really meant, plaintiff asserts, is that "she had
3  been unable to maintain employment as a general matter because of her behavior," which is consistent
4  with her reports thereof to Dr. Gustafson and Dr. Londborg. (Id. at pp. 4-5). This argument is
5  unpersuasive, however, given that elsewhere in the same rating decision, the VA expressly discussed her
6  reported difficulties in getting along with others in relation to the house cleaning and cooking jobs she had
7  done. Thus, the undersigned finds this to be a proper reason for discounting the VA's disability
8  determination here.

Plaintiff, though, argues she was "exhibiting significant OCD symptoms" during this period, "lost cook jobs because of conflicts with other employees due to her compulsive behavior," and those symptoms were only "diminished somewhat" by a trial of sertraline. (Id. at p. 5). The record does reflect that plaintiff reported having lost jobs because of OCD-related symptoms. (see, e.g., Tr. 213). Dr. Londberg stated in early January 1996, however, that while plaintiff discontinued the sertraline in late November 1995, due to concerns about weight gain, upon restarting it in early December 1995, she "was feeling much better" and had "a <u>significant</u> reduction in the core OCD symptoms." Tr. 268 (emphasis added). The undersigned thus rejects the implication that the presence of OCD symptoms during the period under consideration supports the VA's finding of total disability here. Indeed, though the VA does mention "difficulty getting along with others" (Tr. 137), that decision makes no reference at all to plaintiff's OCD.

Plaintiff further argues that even if the VA improperly relied on her dental laboratory technician job to evaluate her as being 100 percent disabled, it was not a valid basis upon which to reject "wholesale" that evaluation. (Dkt. #19, p. 5). But it is clear the VA relied, though perhaps not solely, on plaintiff's inability to maintain that job in determining her to be disabled. The fact that such reliance was in error, therefore, certainly does call into question the VA's disability evaluation as a whole. The undersigned also rejects the implied claim in plaintiff's opening brief that because the dental technician job, which was performed in 1992, pre-dated by several years the late May 1997 rating decision, it was inappropriate for the ALJ to rely on this job to discount that decision. This claim clearly is without merit, however, given

---

[4] Plaintiff concedes the record establishes that the vocational rehabilitation she underwent in 1992 was training to be a dental laboratory technician, and that upon completion thereof she worked as a dental laboratory technician for seven months, but then stopped doing that work because she did not like it as found by the ALJ. See (Dkt. #19, p. 4); Tr. 204, 213.

that the VA did specifically rely on the dental technician job in its evaluation of plaintiff.

As noted above, the ALJ also pointed out the inconsistencies between plaintiff's reported inability to keep clients and maintain employment because of problems with her behavior – upon which the VA relied as well in finding her disabled in late May 1997 – and her reported starting of a take out restaurant business with her domestic partner in 2000, as well as her prior operation of a janitorial business. Plaintiff first suggests this was inappropriate, given that the ALJ found the take out business was not substantial gainful activity. Although the ALJ in general did find plaintiff had not engaged in any substantial gainful activity since her alleged onset date of disability, he also noted it was "unclear as to whether or not" she had "been forthright in reporting her earnings," based on statements she made "to treating sources during the period of time at issue." Tr. 42.

In any event, the issue of substantial gainful activity is primarily a matter concerning step one of the disability evaluation process. In addition, even if work is not performed at the substantial gainful activity level, it may still be highly indicative of an ability to perform work-related activities at a level greater than total disability, such as dealing with others in this case. Plaintiff asserts that the record fails to show how long she worked with the business, how much she worked there or how much she earned, and that the ALJ failed to inquire into these issues at the hearing. With respect to the issue of earnings, however, again the amount earned does not necessarily reflect on the nature or extent of the work-related activities performed.[5] In terms of the nature of the work she performed here, furthermore, plaintiff did testify at the hearing that she oversaw the operation of the business. Tr. 571-72.

Indeed, contrary to plaintiff's statement regarding the record, plaintiff and her domestic partner both reported in mid-April 2001, that they worked "together on a daily basis," and that plaintiff was "the competent one" when it came to running the business. Tr. 454. Finally, with respect to the length of time plaintiff worked in the take out restaurant business, both she and her domestic partner further reported at the time that they had started that business "about ten months ago." Id. Given that it appears plaintiff had participated in running this business for at least 10 months – and did so on a daily basis apparently in the

---

[5] A claimant's earnings "are not the end of the inquiry" in determining whether he or she has engaged in substantial gainful activity. Soria v. Callahan, 16 F. Supp.2d 1145, 1149 (C.D. Cal. 1997). "Substantial work activity" is defined "as work that 'involves doing significant physical or mental activities' and 'is the kind of work usually done for pay or profit.'" Id. (quoting 20 C.F.R. § 416.972(a), (b)). Thus, "'[w]ork may be substantial even if it is done on a part-time basis.'" Id. (quoting Byington v. Chater, 76 F.3d 246, 250 (9th Cir. 1996)). In addition, "'[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.'" Id. at 1150 (quoting 20 C.F.R. §§ 404.1572(b), 416.972(b)).

REPORT AND RECOMMENDATION
Page - 7

capacity of the one who actually ran it – the record is fairly clear that plaintiff's involvement therein was pretty extensive, and thus there was no need for the ALJ to inquire further at the hearing.

The ALJ further correctly points out, as noted above, the 50 hours per week plaintiff previously had spent working in and operating her janitorial business, the time she spent socializing with friends, and her volunteer activity at the stray animal shelter – the latter two of which the ALJ did not unreasonably assume would require at least "some sort of social interaction with others" – as also being inconsistent with the findings contained in the late May 1997 rating decision. Tr. 46-47. In addition, while plaintiff places much emphasis on the opinions of Dr. Gustafson and Dr. Longbord, the ALJ gave Dr. Gustafson's determination that plaintiff would have difficulty interacting with co-workers and supervisors "little weight," because it "relied heavily on" her own self-reports, including those regarding her ability to work with others – which reports, as noted above, the ALJ found to be inconsistent as well. Tr. 47.

Plaintiff has not expressly challenged this finding, nor the ALJ's adverse determination concerning her credibility.[6] See Tr. 45. Plaintiff also has not challenged the ALJ's rejection of one of the state agency medical consultants – who opined that she should not work with the public – on the basis that it relied for the most part on the opinion of Dr. Gustafson. See Tr. 47. In addition, while noting plaintiff's own self-reports regarding her difficulties with OCD, Dr. Longbord himself did not place any limitations on her ability to function socially. Tr. 202-05. Indeed, he assessed plaintiff with a GAF score of 60, indicating at most that she had a moderate impairment in this area. Tr. 205; Vasquez v. Astrue, 547 F.3d 1101 (9th Cir. 2008) ("GAF of 60 . . . indicates 'moderate symptoms' or moderate difficulty in 'social, occupational, or school functioning.'"). The ALJ thus has provided persuasive, specific and valid reasons for discounting the VA's early May 1997 rating decision, in which plaintiff was found 100 percent disabled largely on the basis of alleged difficulties in relating to others in the workplace.

On the other hand, the undersigned agrees with plaintiff that the ALJ erred in failing to discuss a third disability rating decision issued by the VA in late September 1999, determining that the 100 percent disability evaluation given in late May 1997, would continue. Tr. 543. The reasons and bases given by the

---

[6] A physician's opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted).

VA for this determination read in relevant part as follows:

> VA Psychiatric examination dated August 2, 1999 was reviewed. Mental status examination revealed Ms. Crowell as oriented to time and place. She was casually dressed, clean and groomed. Ms. Crowell reported that she does volunteer work at an animal shelter. She currently lives with a partner. Ms. Crowell reported that she does part time work with her partner in a building cleaning business. Ms. Crowell related that she is under significant stress. She continues to suffer flashbacks and intrusive thoughts regarding a rape and knifing. She has significant anxiety and continues to avoid activities or places which would recall those events. Ms. Crowell continues to have social isolation and some restricted range of affect. There was also evidence of vigilance and hyperarousal, as well as irritation and occasional anger. The examiner indicated that these symptoms are clinically important because they indicate that Ms. Crowell continues to suffer significant psychological distress, which would impact her ability to maintain normal work relationships. The level of Ms. Crowell's distress has impacted her social and personal relationships. The examiner concluded with diagnoses of posttraumatic stress disorder, severe with dysthymia. Stressors were shown as stable economic situation, stress with adopting two girls with difficult past, and stable primary support. Global assessment of functioning was shown as 55, which is indicative of moderate symptoms with moderate social and industrial impairment. The examiner provided an opinion that posttraumatic stress disorder continues at the same rate of disability as her last evaluation.
>
> No sustained improvement is shown. The 100 percent evaluation is continued based on severe symptomatology. . . .

Tr. 543-44.

Defendant argues the ALJ's neglect in specifically addressing this most recent VA rating decision was harmless error, because it "simply affirmed the findings" of the late May 1997 rating decision. (Dkt. #21, p. 7). While it is true that the late September 1999 rating decision continued the 100 percent disability determination made by the VA in late May 1997, the stated reasons and bases provided therefor were not the same. Indeed, the late September 1999 rating decision references new medical evidence not previously considered by the VA. Certainly it is possible the ALJ might have come to the same conclusion regarding that more recent rating decision. The undersigned cannot say for certain, however, that this is what would have occurred here, or, more importantly, that had that decision been considered, it would not have had any effect on the ALJ's ultimate disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

II.     The ALJ's Step Four Analysis

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> **. . . [T]he claimant had the residual functional capacity to occasionally lift and carry 100 pounds and frequently lift and carry more than 50 pounds; stand and walk for up to 6 hours in an 8-hour workday; and sit for up to 2 hours in an 8-hour workday; with a need to avoid a high degree of public or social interaction.**

Tr. 44 (emphasis in original). In addition, as noted above, the ALJ found plaintiff's past relevant work as a cook in a restaurant did not require the performance of work-related activities precluded by the above RFC. Tr. 47. Specifically, the ALJ found as follows:

> The claimant's past relevant work as a cook in a restaurant, as she performed it, required the claimant to occasionally lift and carry 100 pounds and frequently lift and carry 10 pounds and stand and walk for the majority of her shift, order supplies and food items, and oversee the work of two employees. In comparing the residual functional capacity the claimant had, as of the date last insured, with the physical and mental demands of this work, the undersigned finds that the claimant would be able to perform this work as it was actually performed.

Tr. 48. Plaintiff argues the ALJ's assessed limitation of needing to avoid a high degree of public and social interaction, is inconsistent with a finding that she could return to a job where she oversaw the work of two employees. The ALJ, plaintiff argues, erred in failing to resolve this inconsistency.

As defendant points out, plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Defendant argues plaintiff has not met this burden, in that the ALJ properly found she could return to her past job as a cook in a restaurant as she actually performed it. The undersigned disagrees. As

REPORT AND RECOMMENDATION
Page - 10

1 pointed out by plaintiff, although the ALJ did not state where he obtained the information concerning that
2 job, the record does indicate that on one occasion she reported supervising cooks and kitchen staff, and on
3 another occasion reported spending 100% of her time supervising two other people. See Tr. **102, 166**. As
4 discussed above, furthermore, plaintiff also has reported that she worked on a daily basis at the restaurant
5 she owned with her domestic partner, and that she was the one who actually ran the business.[7]

6 The ALJ apparently felt that overseeing the work of two employees does not require a high degree
7 of public or social interaction. While perhaps this might be true with respect to public interaction,
8 certainly overseeing employees – even though they may only be two in number – would seem to require a
9 fairly extensive degree of social interaction on plaintiff's part. In addition, given plaintiff's description of
10 her past work noted above, and her report that she was the one who actually ran the restaurant business, it
11 is difficult to conclude that plaintiff's past work did not require a higher degree of social – and most likely
12 public – interaction than contemplated by the ALJ. This issue therefore requires further consideration and
13 inquiry by the Commissioner on remand as well.

14 III. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

15 The Court may remand this case "either for additional evidence and findings or to award benefits."
16 <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's
17 decision, "the proper course, except in rare circumstances, is to remand to the agency for additional
18 investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).
19 Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform
20 gainful employment in the national economy," that "remand for an immediate award of benefits is
21 appropriate." <u>Id.</u>

22 Benefits may be awarded where "the record has been fully developed" and "further administrative
23 proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d
24 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ

---

[7] The undersigned notes that in finding plaintiff to be capable of returning to her past relevant work, the ALJ did not distinguish between the work she did in the restaurant business she ran with her domestic partner and those restaurant cook jobs she previously held.

REPORT AND RECOMMENDATION
Page - 11

would be required to find the claimant disabled were such evidence credited. Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain regarding the VA's late September 1999 rating decision and plaintiff's ability to return to her past relevant work, this matter should be remanded to the Commissioner for further administrative proceedings in regard thereto.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 9, 2008**, as noted in the caption.

DATED this 16th day of December, 2008.

Karen L. Strombom
United States Magistrate Judge